FILED

FEB 06 2026

CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF OHIO
TOLEDO



# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF OHIO
## TOLEDO DIVISION

| | |
|---|---|
| **Michael J. Hofbauer**, Plaintiff, ) | Case no. **3:26 CV 0303** |
| | **JUDGE HELMICK** |
| **V.** ) | **MAG JUDGE CLAY** |
| **Christine A. Kimberly**, Defendant.  ) | **COMPLAINT FOR DEPRIVATION** |
| ) | **OF CIVIL RIGHTS (42 U.S.C. § 1983)** |
| ) | |
| ) | Filed By: **Michael Hofbauer, Plaintiff,** |

Plaintiff Michael J. Hofbauer, proceeding pro se, alleges as follows:

# I. JURISDICTION

This action arises under 42 U.S.C. § 1983 and the First and Fourteenth Amendments to the United States Constitution.

This Court has subject-matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343.

# II. VENUE

Venue is proper in this District under 28 U.S.C. § 1391(b) because the events giving rise to these claims occurred in Lucas County, Ohio.

# III. PARTIES

Plaintiff Michael J. Hofbauer is a resident of Lucas County, Ohio and the biological father of minor child E.M.H.H.

Defendant Christine A. Kimberly was, at all relevant times, appointed as Guardian ad Litem (GAL) in Lucas County Juvenile Court case number 20279622 and acted under color of state law.

# IV. NATURE OF THE ACTION

This action challenges a pattern of conduct by Defendant, acting under color of law, that exceeded the lawful scope of Guardian ad Litem authority and resulted in retaliation, deprivation of procedural due process, interference with familial association, and discrimination against Plaintiff.

Plaintiff does not seek to relitigate the merits of custody determinations. Rather, this action concerns Defendant's independent misconduct, abuse of authority, and actions taken outside the scope of any quasi-judicial function, which resulted in concrete constitutional injuries and compensable damages to Plaintiff. Plaintiff further alleges that these violations were reasonably understood to have occurred in response to Plaintiff's efforts to advocate for due process and access the courts.

# V. IMMUNITY DOES NOT APPLY

Guardians ad Litem are entitled to quasi-judicial immunity only for actions taken within the scope of their lawful duties.

Defendant's conduct, as alleged herein, includes coercive demands, retaliatory actions, selective disclosure of evidence, and actions taken without court authorization.

Such conduct falls outside the scope of Guardian ad Litem duties as defined by Ohio Sup.R. 48, the applicable provisions of the Ohio Revised Code governing guardian ad litem conduct, and the ethical obligations incorporated therein, and is therefore not protected by quasi-judicial immunity.

# VI. FACTUAL ALLEGATIONS

## A. Background and Parenting History

The parents maintained a cooperative co-parenting relationship, with Plaintiff consistently involved in the minor child's life from birth and maintaining a strong, ongoing parental bond. During the early stages of co-parenting, the parties voluntarily entered into a temporary, mediated supervision arrangement journalized in a 2021 Mediation Order, reflecting their shared ability to communicate, compromise, and resolve parenting matters without court intervention. After approximately six to seven months of successful visits, the parents mutually transitioned to unsupervised parenting time by verbal agreement, while the 2021 Mediation Order itself remained unchanged. Unsupervised parenting time thereafter proceeded without incident for multiple years. Court involvement was first sought only when Plaintiff initiated proceedings to address a discrete financial and tax-dependency issue governed by the 2021 Mediation Order—a narrow dispute that did not implicate child safety or parenting capacity. At the initial hearing, the Court suggested consideration of a neutral court evaluator, a proposal with which Plaintiff agreed. Plaintiff expressly objected to the appointment of a Guardian ad Litem and sought a more limited evaluative process. Nevertheless, at the request of

opposing counsel, Defendant was appointed as Guardian ad Litem, resulting in an escalation of the proceedings beyond what the circumstances reasonably required, particularly where the proceedings involved no findings or allegations of abuse, neglect, dependency, or adoption-related concerns, and where the underlying dispute was narrow in scope and capable of resolution through less intrusive means.

## B. Retaliation, Coercion, and False Assertion of Authority

Defendant, acting under color of her GAL authority, advanced and implemented severe visitation restrictions without articulable evidence of imminent harm to the child. In practice, Plaintiff was treated as though visitation through a Children's Resource Center (CRC) was his only viable option, despite the absence of a contemporaneous court order imposing such a restriction.

The CRC visitation was imposed as a condition precedent to any parenting time, limited in duration, and conditioned on Plaintiff bearing the full financial cost despite Defendant's documented awareness of Plaintiff's indigency. These conditions operated as a coercive barrier to the exercise of Plaintiff's fundamental parental rights. Plaintiff's refusal to submit to such conditions reflected an assertion of those rights, not acquiescence in their suspension.

Defendant lacked authority to impose, announce, or enforce visitation conditions and nevertheless presented these restrictions to Plaintiff as settled fact, thereby misrepresenting her role and the status of the proceedings. Defendant further attempted

to effectuate CRC visitation requirements prior to any ruling by the Court, effectively substituting her own authority for that of the judiciary.

In early 2025, when Plaintiff proposed child-safe public settings such as the downtown library and the park near Mother's home, and suggested using Mother's fiancé Adam as a temporary supervisor, Defendant refused to negotiate any alternative and told Plaintiff he "probably would have had CRC visits going already, but [he] didn't want that," framing CRC as the only acceptable option rather than a recommendation for the Court to consider. Defendant repeatedly redirected Plaintiff's questions away from solutions and back to her own unilateral conditions, despite the absence of any court order imposing CRC.

In close temporal proximity to Plaintiff raising the prospect of appeal and mistrial, Defendant escalated her conduct by stating that she would recommend termination of Plaintiff's parental rights and the issuance of protection orders prohibiting contact between Plaintiff and his son, in response to Plaintiff's assertion of legal rights rather than any child-centered justification existing at the time.

Such statements were made in a manner reasonably understood as threats designed to chill Plaintiff's access to the courts and deter protected activity, and were not tied to any contemporaneous court finding, investigation, or substantiated allegation of harm.

In further retaliation and without court authorization, Defendant repeatedly demanded that Plaintiff submit to immediate drug testing at a probation facility, despite Plaintiff not being subject to probation, treatment, or any court-ordered testing requirement. These

demands were made within hours of Plaintiff filing motions seeking Defendant's removal and other relief, underscoring the retaliatory timing. Ohio law permits drug testing of a parent only when ordered by the court and only during or after treatment; Defendant's unilateral demands exceeded her authority, misrepresented the law, and functioned as an additional coercive measure intended to punish Plaintiff for asserting his rights.

## C. Selective Disclosure and Evidentiary Misconduct

Defendant provided negative character allegations to the Court while refusing to disclose underlying notes, communications, and materials requested by Plaintiff through lawful subpoena duces tecum.

Defendant sought protective orders to conceal unprivileged communications between herself, opposing counsel, and the opposing party.

Defendant's report relied on hearsay, unsworn statements, and materials not subjected to cross-examination.

## D. Failure to Perform Mandatory GAL Duties

Defendant failed to observe the minor child with Plaintiff.

Defendant failed to investigate or interview multiple identified witnesses who could provide favorable information regarding Plaintiff's parenting and community involvement.

Ohio Sup.R. 48 and the ethical standards governing guardian ad litem conduct require a GAL to inform the court when circumstances arise that impair the GAL's ability to function impartially or effectively. Despite prolonged and documented breakdowns in communication, trust, and neutrality between Defendant and Plaintiff over the course of more than a year, Defendant never advised the Court of any such impairment or sought guidance, substitution, or withdrawal. This omission further demonstrates conduct outside the scope of protected quasi-judicial functions.

## E. Interference with Familial Association

Defendant's conduct substantially interfered with Plaintiff's fundamental right to familial association without sufficient child-centered justification or a reliable evidentiary foundation.

# VII. Constitutional Violation Counts

## Count I – 42 U.S.C. § 1983 Fourteenth Amendment – Due Process / Familial Integrity.

Plaintiff incorporates by reference all preceding paragraphs as if fully rewritten here.

At all relevant times, Defendant Christine A. Kimberly was appointed by the Lucas County Domestic Relations Court as Guardian ad Litem in case no. 20279622 and acted under color of state law.

Plaintiff has a fundamental liberty interest in the care, custody, companionship, and control of his minor child, protected by the Due Process Clause of the Fourteenth Amendment.

Defendant's challenged actions were **administrative / investigative / coercive**, not advocacy to the court.

While clothed with the authority of the court, Defendant engaged in a series of actions that were not part of any legitimate GAL duty under Sup.R. 48.03 and ORC 2151.281, including but not limited to:

- Unilaterally demanding that Plaintiff submit to drug and alcohol testing without any court order or authorization, and conditioning her recommendations on his compliance.

- Repeatedly threatening Plaintiff with negative recommendations and restrictions on his parenting time if he did not comply with her unilateral demands.[file:31]

- Harassing Plaintiff for payment of GAL fees through informal third-party applications such as Cash App, despite Plaintiff's indigency and unresolved allocation of fees by the court.

- Refusing to perform required investigative duties, including timely home visits and interviews, while nevertheless issuing a report omitting favorable information about Plaintiff and his parenting.

- Blocking Plaintiff's attempts to obtain GAL communications with opposing counsel and Mother through subpoena, while permitting her own communications with Plaintiff to be used against him.

- Defendant knew that her recommendations and statements would be given substantial weight by the magistrate and judge, and that the court relied on her report and recommendations when restricting or eliminating Plaintiff's parenting time and contact with his child.

- Defendant's conduct was arbitrary, biased, retaliatory, and unrelated to the child's actual best interests, and it directly caused the substantial interference with Plaintiff's parent-child relationship and loss of contact with his child.

- By using her state-granted authority to pursue personal animus, retaliation, and harassment, rather than to perform legitimate GAL duties, Defendant deprived

Plaintiff of his Fourteenth Amendment rights to substantive due process and to familial integrity.

- Defendant's conduct was intentional, willful, or in reckless disregard of Plaintiff's constitutional rights, and was not objectively reasonable in light of clearly established law, defeating any claim to qualified or quasi-judicial immunity for these out-of-scope acts.

- As a direct and proximate result of Defendant's actions, Plaintiff has suffered and continues to suffer emotional distress, loss of the companionship and society of his child, damage to reputation, financial losses, and other injuries in an amount to be determined at trial.

- Treating supervised visitation at CRC as a mandatory precondition to any contact and presenting it to Plaintiff as a settled requirement, while refusing to consider or facilitate reasonable alternatives (such as public-place visits or a mutually known supervisor), despite lacking authority to impose visitation terms absent a court order.

## Count II – 42 U.S.C. § 1983  First Amendment – Retaliation for Protected Petitioning Activity.

Plaintiff incorporates by reference all preceding paragraphs as if fully rewritten here.

Plaintiff engaged in protected activity under the First Amendment by:

Filing motions in case no. 20279622, including motions to dismiss Defendant as GAL, motions to suppress her report, subpoenas duces tecum for GAL communications, and other pleadings challenging her conduct and recommendations.

Expressing concerns and objections directly to Defendant and to the court about her bias, failures to comply with Sup.R. 48.03, and actions outside the scope of her appointment.

Defendant was aware of Plaintiff's protected activity, including his motions to dismiss her, his subpoenas, and his intent to appeal the trial court's decisions.

After and because of Plaintiff's protected activity, Defendant took adverse actions that would deter a person of ordinary firmness from continuing to exercise their rights, including.

Issuing immediate demands that Plaintiff appear for drug testing within hours of his filings seeking her removal or challenging her conduct.

Threatening to recommend extremely limited supervised visitation at the CRC at Plaintiff's expense if he continued to challenge her or refused her unauthorized demands.

Opposing Plaintiff's efforts to obtain GAL communications, and seeking protective orders to shield her communications with Mother and opposing counsel from disclosure.

Making negative, misleading, or incomplete statements to the court about Plaintiff's cooperation and alleged substance use, while omitting favorable information he had provided.

Defendant's adverse actions were substantially motivated by Plaintiff's exercise of his First Amendment right to petition the government and to access the courts in his domestic relations case.

Defendant's retaliatory conduct, undertaken under color of state law, caused further restriction or elimination of Plaintiff's parenting time, increased financial burden, and additional emotional distress.

By retaliating against Plaintiff for engaging in protected petitioning activity, Defendant violated Plaintiff's rights under the First Amendment, enforceable through 42 U.S.C. § 1983.

As a direct and proximate result, Plaintiff suffered constitutional injury, emotional harm, reputational damage, and financial losses, and is entitled to compensatory and punitive damages in an amount to be determined at trial.

### Count III – 42 U.S.C. § 1983 and the Americans with Disabilities Act Concepts

### Disability-Based Discrimination / Equal Protection.

Plaintiff incorporates by reference all preceding paragraphs as if fully rewritten here.

Plaintiff has a history of substance use disorder and has participated in treatment and recovery programs, including successfully completing substance abuse treatment, maintaining sobriety, and engaging in long-term volunteer work in the recovery community.

Substance use disorder and related recovery status constitute a physical or mental impairment that substantially limits one or more major life activities, and are therefore disabilities within the meaning of the ADA and related federal disability protections.

Defendant was aware of Plaintiff's history of substance use disorder and recovery, and repeatedly focused on that history in her communications, conduct, and report.

Rather than evaluating Plaintiff based on his current condition, treatment completion, clean drug screens, and successful parenting history, Defendant treated Plaintiff as if he were currently abusing substances and as inherently dangerous or unfit on that basis alone.

Defendant demanded additional drug testing without court authority, ignored or discounted clean test results and treatment completion records, and used Plaintiff's past addiction and recovery status as a basis to recommend severe restrictions on his contact with his child.

Defendant did not treat Mother, who also has a history of substance issues and recovery, in the same manner, and instead favored Mother's party, demonstrating differential treatment of Plaintiff based on disability-related bias.

By using Plaintiff's disability and recovery status as a basis to disfavor him, disregard objective evidence of his rehabilitation, and recommend restrictions on his parental rights while favoring the non-disabled or differently-treated parent, Defendant discriminated against Plaintiff on the basis of disability and denied him equal protection of the laws.

Defendant's discriminatory conduct was intentional or carried out with deliberate indifference to Plaintiff's federally protected rights.

As a direct and proximate result of Defendant's disability-based discrimination, Plaintiff suffered loss of contact with his child, emotional distress, stigma, and financial harm, and is entitled to compensatory and punitive damages, as well as declaratory and injunctive relief, in an amount to be determined at trial.

# VIII. DAMAGES

As a direct and proximate result of Defendant's conduct, Plaintiff suffered severe and ongoing injuries, including prolonged separation from his minor child, emotional distress, loss of familial association, reputational harm, and substantial disruption to his

personal and economic stability. Plaintiff was deprived of contact with his son for approximately fifteen months, despite repeated and documented efforts to restore parenting time through lawful and cooperative means.

The prolonged deprivation of parental contact caused profound emotional harm to Plaintiff and foreseeably harmed the child's relationship with his father. During this period, Plaintiff experienced significant psychological distress, destabilization of housing, loss of familial support, and near loss of employment, all of which were exacerbated by the uncertainty, coercion, and retaliatory posture surrounding Defendant's conduct. These harms were not incidental or momentary but cumulative and debilitating over time.

Plaintiff's injuries include not only emotional and psychological harm, but the loss of irreplaceable time, experiences, and bonding with his child—injuries for which no retrospective remedy can fully compensate.

# VIII.A. Good-Faith Efforts to Obtain Relief

Prior to initiating this action, Plaintiff undertook extensive and sustained efforts to resolve the underlying issues without resort to federal litigation. These efforts included, among other things:

• Multiple motions filed in the juvenile court seeking modification of parenting time, emergency relief, and removal or limitation of Defendant's role;

• Repeated written requests and attempted negotiations with Defendant and opposing counsel regarding visitation and procedural fairness;

• Formal complaints submitted to local child advocacy and oversight entities, including two complaints to LCCASA advocates;

• Submission of complaints to civil rights organizations and oversight bodies, including the American Civil Liberties Union and the Civil Rights Commission, concerning Defendant's conduct;

• Efforts to seek review and accountability through professional and public channels, including a complaint submitted to the county ombudsman responsible for oversight of child services matters, all of which failed to produce corrective action or meaningful investigation due to jurisdictional limitations or procedural barriers.

Despite these good-faith efforts over an extended period, Plaintiff was unable to obtain relief, accountability, or restoration of his constitutional rights through state proceedings or administrative channels.

Plaintiff further attempted in good faith to obtain legal representation prior to initiating this action. Plaintiff contacted multiple private law firms and applied for legal aid and pro bono assistance through available programs, completing extensive intake and eligibility requirements. These efforts were unsuccessful due to financial limitations and the unavailability of counsel willing or able to undertake the matter. Plaintiff therefore brings this action pro se, not by choice, but by necessity, after exhausting reasonable avenues to secure representation.

# IX. RELIEF REQUESTED

## Plaintiff respectfully requests that this Court:

A. Declare that Defendant's actions violated Plaintiff's constitutional rights;

B. Enjoin Defendant from further involvement in Lucas County Juvenile Court case number 20279622;

C. Award compensatory damages in an amount to be determined at trial;

D. Award costs and such other relief as the Court deems just and proper.

# X. JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable.

Respectfully submitted,_____      Date: January 23, 2026

**Michael J. Hofbauer Plaintiff, Pro Se**